**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL LEROY CAGLE, | Case No. 1:15-cv-00852-SKO |
| Plaintiff, | **ORDER RE PLAINTIFF'S SOCIAL SECURITY APPEAL** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff, Carl Leroy Cagle ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI") Benefits pursuant to Title XVI of the Social Security Act. 42 U.S.C. § 1381-83. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II. FACTUAL BACKGROUND

Plaintiff was born on February 4, 1963, and alleges disability beginning on December 1, 2009. (Administrative Record ("AR") 258.) Plaintiff claims he is disabled due to difficulty walking, sciatic nerve, difficulty sitting, and back and leg pain. (*See* AR 227.)

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 10; 11.)

**A.     Relevant Medical Evidence**

Plaintiff was treated at Kern Medical Center from July 2010 through May 2013. (AR 266-98; 310-15; 319-54; 360-76.)[2] On July 8, 2010, decreased lumbar range of motion and left knee tenderness to palpitation were observed. (AR 266.) Imaging of Plaintiff's left knee revealed tears of the anterior cruciate ligament and another ligament. (AR 266.)

On January 24, 2011, tenderness was again observed upon palpitation of Plaintiff's lower back and positive left knee edema was reported. (AR 270.) On January 25, 2011, radiological imaging of Plaintiff's left knee revealed degenerative joint disease with small joint effusion and exostosis of the proximal left tibia medially (AR 289) and imaging of Plaintiff's lumbar spine revealed degenerative joint disease and grade II spondylolsthesis of the L5 vertebrae. (AR 292.) Radiological imaging of Plaintiff's right knee on January 26, 2011, revealed minimal degenerative joint disease of the right knee with a small amount of joint effusion and a "[p]robably old chip fracture of the right tibial tubercle or old Osgood-Schlatter disease." (AR 288.)

On September 30, 2011, at the request of the state agency, Dr. Kale H. Van Kirk, M.D., performed an orthopedic examination. (AR 299-303.) Dr. Van Kirk reviewed the lumbar spine imaging studies but did not review imaging of Plaintiff's bilateral knees. (AR 299.) Plaintiff reported a history of chiropractic and physical therapy with only minimal benefits and no acupuncture or surgical interventions. (AR 299-300.) Plaintiff's pain radiates down both legs and increased if he lifts heavy objects, twists, turns, climbs, runs, jumps, squats, goes up and down ladders or stairs, crouches, or crawls. (AR 300.) He can stand and walk for about 15 minutes and sit for about 2 minutes, uses a cane sometimes to help with balance and getting up and out of chairs, and has a history of falling due to pain in his back and weakness in his legs. (AR 300.)

On examination, Plaintiff's lumbar spine range of motion was restricted with radiating pain, and a positive straight leg test was observed at the supine position. (AR 301-02.) Plaintiff had normal sensation in the upper and left lower extremities as well as a strip of hypoesthesia along the lateral aspect of the right lower extremity. (AR 302.) Dr. Van Kirk could not detect

---

[2] The handwritten treating notes from Kern Medical Center were, unfortunately, largely illegible and the Court was forced to make its best efforts to decipher the notes.

patellar reflexes.  (AR 302.)  Dr. Van Kirk diagnosed Plaintiff with chronic lumbosacral musculoligamentous strain/sprain associated with degenerative joint disease; and grade II spondylolisthesis of the L5 on S1.  (AR 302.)  He opined Plaintiff could stand and walk cumulatively four hours out of an eight-hour day and would require the ability to sit down and rest periodically for a brief period of time; could sit cumulatively for four hours out of an eight-hour day and would require the ability to stand up and move around periodically for a brief period of time to stretch and reposition himself; "should use his cane when he is out and about for even and uneven terrain and also at home to help with balance . . . and to help him to get up and out of a chair[;]" could lift and carry 25 pounds frequently and 50 pounds occasionally; had no manipulative limitations; could not work in cold or damp environments; and could only occasionally crouch, bend, stoop, climb, kneel, balance, crawl, push, or pull.  (AR 302-03.)

On November 29, 2011, magnetic resonance imaging of Plaintiff's lumbar spine revealed multilevel lumbar disc bulges/osteophytes at L1-S1, with stenosis at L2-3 and L4-S1, most severe at L5-S1 foramina; lumbar degenerative disease at L3-L4 and L5-S1; worsening of L5-S1 anterolisthesis grade II with widening of bilateral pars defects; wedging of L5 vertebral body; bilateral lumbar facet joint arthropathy at L5-S1; dextroscoliosis of lower thoracic spine and levoscoliosis of mid-to-lower lumbar spine.  (AR 419.)

On February 29, 2012, Dr. Jan Eckermann, M.D., saw Plaintiff for a neurosurgery consultation.  (AR 314-15.)  On examination Dr. Eckermann observed Plaintiff was "tender to palpation with bilateral positive leg raise test consistent with severe nerve compression."  (AR 314.)  Dr. Eckernmann noted imaging studies "showed L5-S1 and grade II spondylolisthesis, which created a significant narrowing of the foramen."  (AR 314.)  Dr. Eckermann opined Plaintiff had "severely disabling" severe leg and back pain secondary to grade II L5-S1 spondylolisthesis that would prevent Plaintiff "from doing any kind of work that is associated with lifting or prolonged sitting" and requested surgical authorization for L5-S1 fusion, laminectomy, and decompression of that area and prescribed Plaintiff Norco "to carry him over."  (AR 314.)

On August 23, 2012, Plaintiff was seen for medication refill and reported that, although his pain had improved with use of morphine, it remained high at 8/10 with medication and 10/10

without medication. (AR 360.) Plaintiff was assessed with L5-S1 spondylolistheis, grade 2, diabetes, and hypertension, and presented with an antalgic gait. (AR 360-68.)

From March 22 through May 17, 2013, Plaintiff was seen at Central Valley Pain Management for pain management. (AR 416-21.) On March 25, 2013, Plaintiff was noted to be awaiting an L5/S1 fusion surgery and laminectomy by Dr. Eckermann; but needed to lose 100 pounds. (AR 382.) On April 19, 2013, Plaintiff received a bilateral sacroiliac joint injection with steroid and local anesthesia for bilateral sacroiliac tenderness and reported a pain level of 10/10. (AR 417-18.)

**B.    Testimony**

   **1.    Plaintiff's Self-Assessments**

On August 10, 2012, Plaintiff completed an adult function report, stating that he does not do "much of anything" due to the pain in his back (AR 250), and cannot dress or stand for long because of his pain (AR 251-52). Plaintiff cooks for himself every day and spends about 3 to 5 minutes preparing each meal. (AR 252.) He spends most of his day watching television and cannot sleep for a long period of time due to his pain. (AR 254.) He cannot bend or squat due to pain, can only lift 3 pounds at a time, and has difficulties standing, reaching, walking, sitting, kneeling, climbing stairs, and completing tasks. (AR 255.) He can walk about 20 feet before needing to rest for 10 to 15 minutes, can follow written and spoken instructions "ok," has no difficulties concentrating, and is able to pay attention "all the time." (AR 255.)

   **2.    Third-Party Assessment**

On August 2, 2012, Plaintiff's friend Chrystal Forrister completed a third-party adult function report. (AR 242-49.) Ms. Forrister reported Plaintiff spent the "majority" of his time "sitting, laying, leaning for support to ease pain" and "constantly trying to get comfortable & any sort of relief from pain." (AR 242.) Prior to his impairments, Plaintiff could "work, lift over 51 lbs, [do] yardwork, bend over without pain" and "ride in a car without stopping every 10 min[utes] to ease pain." (AR 243.) Plaintiff requires help with dressing to bend over and put on his shoes and socks and get his pants on, and takes 30-45 minutes to get dressed, must use extenders to properly wash and wipe when using the toilet, cannot keep his hands steady to shave, and must

4

lean against the wall to brush his teeth and to urinate. (AR 243.) Plaintiff cannot stand long enough to cook and does not use a stove or oven. (AR 243-44.)

Ms. Forrister reported Plaintiff is limited in his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, concentrate, complete tasks, and use hands, can walk about 8 steps before needing to rest 10-20 minutes, and can only concentrate for a few minutes at a time due to pain. (AR 247.) Due to his pain, Plaintiff "constantly sweats" and his "body shakes, he can never get comfortable in any environment" and "he gets very depressed with his inability to do hardly anything without severe pain." (AR 249.)

### 3. Hearing Testimony

#### a. Plaintiff's Testimony at Hearing

Plaintiff testified he had numbness in both legs -- his left more than his right -- nearly all the time. (AR 62-63.) He normally leans rather than stands, to "take the pressure off" his back. (AR 63.) Plaintiff uses a cane, and believed a physician at Kern Medical Center had prescribed the use of a cane to him at some point three or four years earlier. (AR 64.) Plaintiff's physician had prescribed surgery for Plaintiff, but Plaintiff had failed to lose enough weight to have the surgery despite his "good faith" efforts to lose weight by exercising in his apartment swimming pool. (AR 64-66 (testifying that he had lost about 20-22 pounds in the past six months).)

Plaintiff further testified that he did not feel he could "handle any kind of job eight hours a day, five days a week" because he "d[id]n't think [he] could stand long enough to do [his] job and the employers don't want to see you leaning and stuff." (AR 66.) He spends most of his day lounging in a large chair, midway between sitting up and laying down, and has difficulty getting up from a seated position. (AR 66-67.) Plaintiff's pain affects his concentration and makes it difficult to sleep. (AR 67.) Plaintiff also has "numbness" in his hands and had gotten "pain injections" and used a TENS unit, without benefit. (AR 67-68.) Plaintiff brought a cane to the hearing and reported using it for "maybe five months." (AR 72.) Plaintiff uses a microwave and an oven to cook for himself, and is able to shop by himself with the use of a mobility scooter. (AR 69.)

//

Plaintiff completed seventh and eighth grades with "F's" and dropped out of school because he "just didn't feel [he] needed it." (AR 73-74.) He never returned for a GED certificate or completed any other schooling. (AR 74.) Plaintiff did not work between 2000 and 2007 because he "[c]ouldn't find any work" and worked in 2008 as an apartment maintenance worker. (AR 70-71.)

### b.   Medical Expert Testimony at Hearing

The Medical Expert ("ME") testified at the hearing that based on his review of the medical evidence of record, Plaintiff did not meet or equal any Listing. (AR 58; *see also* AR 61 (testifying Plaintiff did not meet the requirements of Listing 1.04C).) The ME testified that Plaintiff could lift 20 pounds occasionally and 10 pounds repetitively; stand, sit, and walk for four hours, two hours at a time; was unable to use bilateral foot pedals; bend and climb stairs occasionally; could not stoop, crawl, kneel, crouch, or climb ropes, ladders, or scaffolding; and would be precluded from working at unprotected heights. (AR 58-61.) The ME further testified that there "was no documentation in the medical records of [Plaintiff] ever obtaining a walker or any assistive device being prescribed or used." (AR 60.)

### c.   Vocation Expert Testimony at Hearing[3]

The Vocational Expert ("VE") testified at the hearing that Plaintiff had prior relevant work experience as an apartment maintenance worker, DOT 382.664-010, medium work with an SVP level of 3.[4] (AR 76.)

The ALJ asked the VE to consider an individual of Plaintiff's same age, education, and work experience who can lift and carry 50 pounds occasionally and 25 pounds frequently; stand or walk about four hours of an eight-hour workday with use of a cane; sit four hours of an eight-hour day; sit or stand at his own discretion; push, pull, balance, stoop, crawl, crouch, and kneel only occasionally; and could have no exposure to cold or wet environments. (AR 77.) The VE testified

---

[3] The VE testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations ("SCO"), except where he explained any inconsistency. (AR 75.)

[4] Specific Vocational Preparation ("SVP"), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

1  that such a person could not perform Plaintiff's past relevant work but could perform the
2  requirements of cashier II, DOT 211.462-010, light work with an SVP of 2. (AR 77-78.) Due to a
3  50% erosion of available jobs based on Plaintiff's use of a cane to walk/stand, limitation to
4  stand/walk only four hours out of an eight-hour day, and sit/stand at will, the VE testified that
5  there would be approximately 400,000 such jobs in the national economy and 41,000 such jobs
6  available in California. (AR 79.)

7        The VE further testified that a hypothetical person who would only use a cane to walk,
8  rather than walk/stand, could also perform the requirements of electrical accessories assembler,
9  DOT 729.687-010, light work with an SVP of 2, and surveillance systems monitor, DOT 379.367-
10  010, sedentary work with an SVP of 2. (AR 80-81.) Due to a 50% erosion of available jobs based
11  on Plaintiff's use of a cane to walk, limitation to stand/walk only four hours out of an eight-hour
12  day, and sit/stand at will, the VE testified that there would be approximately 18,500 electrical
13  accessories assembler jobs in the national economy and 2,200 such jobs in California. (AR 81.)
14  There would be 8,000 surveillance systems monitor jobs in the national economy and 1,700 such
15  jobs in California, not subject to erosion. (AR 82.) The VE also testified that there would be
16  unskilled work as a telephone solicitor, though the DOT normally defines telephone solicitor work
17  as requiring an SVP of 3. (AR 82.)

18        The VE then modified the first hypothetical to ask whether a hypothetical individual who
19  could also never use ropes, scaffolding, or ladders or work at unprotected heights and could only
20  occasionally climb stairs could work. (AR 82-83.) The VE testified that such a person could
21  perform the requirements of the work identified in the first hypothetical; it is unclear from a
22  review of the transcript whether this referred to the requirements of cashier II as well as electronic
23  accessories assembler and surveillance systems monitor. (AR 83.)

24        The ALJ then asked the VE whether a hypothetical individual limited to lifting or carrying
25  10 pounds occasionally and zero pounds frequently; standing or walking two hours of an eight-
26  hour workday and no more than 10 minutes continuously and requiring use of a cane; sitting less
27  than two hours of an eight-hour workday and no more than 10 minutes continuously; pushing,
28  pulling, and climbing stairs occasionally; and who could never climb ladders, stoop, crawl,

crouch, kneel, be exposed to cold or wet environmental, work at unprotected heights, or work in hazardous environments could work. (AR 83.) The VE testified that such a person could not work. (AR 83-84.)

Plaintiff's attorney asked the VE whether a person off task a minimum of 20% of the day because of pain could work. (AR 84-85.) The VE testified such an individual could not work. (AR 85.)

**C.    Administrative Proceedings**

On August 29, 2013, the ALJ issued a written decision and found that Plaintiff had severe impairments of lumbar degenerative disc disease, obesity, osteoarthritis of the knees, bilateral sacroiliac joint arthropathy, and sleep apnea. (AR 12.) The ALJ determined that these impairments did not meet or equal a listed impairment. (AR 13.) The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations:

> . . . lift/carry 25 pounds frequently and 50 pounds occasionally; stand/walk no more than 4 hours in an 8-hour day with the use of a cane for walking; sit no more than 4 hours in an 8-hour day; must be allowed to sit or stand at will; perform no more than occasional pushing, pulling, balancing, stooping, crawling, crouching, kneeling or climbing stairs; no exposure to cold or wet environment; no climbing ropes, ladders or scaffolds; and no working around unprotected heights.

(AR 13 (defining "occasional" as occurring "from very little up to one-third of the time, or approximately 2 hours in an 8-hour workday").)

Given this RFC, the ALJ found that Plaintiff was unable to perform his past relevant work. (AR 16-17.) After considering Plaintiff's age, limited education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, including representative occupations cashier II, DOT 211.462-010, "unskilled, light work, representing about 41,000 jobs in California and about 400,000 jobs in the national economy after a 50% erosion of the occupation based secondary to nonexertional limitations;" electronic accessories assembler, DOT 729.687-010, "unskilled, light work, representing about 2,200 jobs in California and about 18,500 jobs in the national economy after a 50% erosion of the occupation based secondary to nonexertional limitations;" and surveillance system monitor, DOT

379.387-010, "unskilled, sedentary work, representing about 1,700 jobs in California and about 8,000 jobs in the national economy." (AR 18.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (AR 18.)

The Appeals Council denied Plaintiff's request for review on April 10, 2015, making the ALJ's decision the Commissioner's final determination for purposes of judicial review. (AR 1-4.)

**D.  Plaintiff's Complaint**

On June 4, 2015, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 1.)  Plaintiff argues that the ALJ erred in discrediting Plaintiff's treating physician's medical opinion and in discrediting Plaintiff's subjective testimony. (Docs. 11; 19.)

### III.  SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV.  APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or

mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In Step 1, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ must determine at Step 2 whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, the ALJ moves to Step 3 and determines whether the claimant has a severe impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments ("Listing"), 20 § 404, Subpart P, App. 1, and is therefore presumptively disabled. *Id.* §§ 404.1520(d), 416.920(d). If not, at Step 4 the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, at Step 5, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.   DISCUSSION

Plaintiff contends the ALJ erred in failing to fully credit the opinion of treating physician Dr. Eckermann and by finding Plaintiff not credible. (Docs. 11; 19.)

//

//

**A.     The ALJ's Consideration of Testimony**

Plaintiff contends the ALJ failed to articulate clear and convincing reasons for discounting his statements regarding the severity and extent of his ongoing symptoms. (Docs. 11; 19.) The Commissioner contends the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's subjective complaints. (Doc. 18.)

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). The ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Vasquez*, 572 F.3d at 591. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.*

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

**2.     The ALJ's Consideration of Plaintiff's Credibility**

The ALJ provided several reasons for finding Plaintiff less than fully credible. The ALJ noted that

> . . . Several factors undermine [Plaintiff]'s credibility concerning his reported symptoms and limitations. [Plaintiff] has a very limited work history and had no

> recorded earnings for several years prior to the alleged onset date. [Plaintiff] stated that he can walk for about 20 feet before he needs to rest, lift no more than 3 pounds, sit for no more than a couple of minutes and stand/walk no more than 15 minutes. However, these drastic limitations are plainly inconsistent with the treatment notes that stated that he was in no acute distress. No treating source has noted these limitations, [Plaintiff] had 5/5 muscle strength upon examination, he was able to walk on his heels and toes. [Plaintiff] has received limited, conservative treatment, but he was not compliant with even such limited treatment, as he did not use the prescribed CPAP machine. [Plaintiff] has not had a lumbar steroid injection. Contrary to the testimony during the hearing, [Plaintiff] reported that the use of a TENS unit and a back brace helped relive his pain. [Plaintiff] stated that he spends most the day watching television, which is contrary to the alleged drastic limitations concerning his ability to sit and stand and his testimony concerning his concentration.

(AR 15-16 (internal citations to the record omitted).)

While a plaintiff's "spotty" work history prior to claiming disability, such as Plaintiff's years of unemployment from 2000 through 2007, are a valid reason to discount a plaintiff's credibility, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see also Taylor v. Colvin*, 618 F. App'x 342 (9th Cir. 2015); *Sherman v. Colvin*, 582 Fed. App'x 745, 748 (9th Cir. 2014), Plaintiff testified that he had attempted and was unable to find work during that period (AR 70). When Plaintiff found work as an apartment maintenance worker, he was only able to work part of 2008 and 2009 prior to his alleged onset date of December 1, 2009. (AR 70-71; 211.)

Though the Commissioner correctly states that where "the primary impetus for the application [for benefits] was not a disabling impairment, but unemployment" (Doc. 18, p. 12), the ALJ *did not* specify that he disbelieved Plaintiff's impetus in applying for benefits was his unemployment, *see Rangel v. Colvin*, No. 1:12-CV-01169-JLT, 2013 WL 3456975, at *8 (E.D. Cal. July 9, 2013) (ALJ erred in discounting plaintiff's credibility because "she failed to identify what testimony is not credible based upon [plaintiff's] work history"). "General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted); *see also Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (ALJs "must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints"); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJs must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints").

Here, the ALJ did not carry this burden.

The ALJ further erred by rejecting Plaintiff's subjective testimony as inconsistent with his treating physicians' clinical observations, including that he was repeatedly observed to be in "no acute distress," 5/5 muscle strength upon examination, and heel/toe walk. (AR 16; *see also* AR 361; 364; 365; 368.) While an ALJ's credibility finding may properly be based on the inconsistency between a claimant's subjective complaints and the objective medical evidence, *see Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Moran v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999), such inconsistency may not be the sole reason for rejecting a claimant's subjective complaints of pain, *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting a claimant's testimony must be clear and convincing and specifically supported by substantial evidence in the record. *Bowser v. Comm'r of Soc. Sec.*, 121 F. App'x 231, 241 (9th Cir. 2005).

Here, it is unclear how Plaintiff's appearance of being in "no acute distress," having good muscle strength, and adequate heel/toe walk on certain occasions are outweighed by the longitudinal medical record documenting constant reports of 10/10 pain accompanied by clinical observations of reduced range of motion, tenderness on palpation, and antalgic gait as well as significant objective findings. (*See* AR 266; 270; 288; 289; 292; 301-02; 360-68; 416-21.) To the extent the objective evidence does not support the severity of the limitations asserted by the Plaintiff, the ALJ's decision does not articulate *how* this specific evidence actually contradicts Plaintiff's testimony that he "can walk for about 20 feet before he needs to rest, lift no more than 3 pounds, sit for no more than a couple of minutes and stand/walk no more than 15 minutes." (*See* AR 16.) Without more, the ALJ's referral to clinical observations of "no acute distress," 5/5 muscle strength, and ability to walk on heel and toe for a short distance is not sufficiently specific to reject Plaintiff's subjective testimony. *See Lester*, 81 F.3d at 834.

The ALJ also discredited Plaintiff's subjective complaints for his receipt of "limited, conservative treatment," noting Plaintiff had never received a "lumbar steroid injection" and emphasizing that Plaintiff was not compliant with "even such limited treatment, as he did not use the prescribed CPAP machine." (AR 16.) The Commissioner is correct that an unexplained, or

13

inadequately explained, failure to seek treatment or follow a prescribed course of treatment can be a basis to discount a plaintiff's symptom testimony. (Doc. 18, p. 13.) *See, e.g., Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Even assuming Plaintiff's regimen of powerful pain medications (*see* AR 68 (testifying he takes morphine, hydrocodone, and norco for his severe pain)) can constitute "conservative treatment," *see Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir.2008) (ALJ found claimant's treatment to be conservative where claimant took only Ibuprofen to treat his pain), Plaintiff's treatment has not been so limited.

For example, Plaintiff received a "bilateral sacroiliac joint injection with steroid and local anesthesia" (*see* AR 416-17) and was recommended for "L5/S1 fusion surgery" and "laminectomy" by Dr. Eckermann based on his "severely disabling" pain "secondary" to his "L5-S1 and grade II spondylolisthesis" (AR 314). This is not a "conservative course of treatment." *Cf. Johnson v. Colvin*, No. 1:12-cv-00524-AWI-GSA, 2013 WL 2643305, at * 13 (E.D. Cal. June 12, 2013) ("Plaintiff's spinal pain was treated with medication and not injections or surgery" and this "[c]onservative course of treatment is a proper basis to reject Plaintiff's subjective complaints").

The Ninth Circuit has repeatedly held that no adverse credibility finding is warranted where a claimant has a good reason for failing to obtain treatment. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, Plaintiff explained that he was *unable* to pursue any surgical option due to his weight, and was trying in good faith to reach a weight that would enable him to pursue such "non-conservative" treatment. (*See* AR 382 (Plaintiff needed to lose 100 pounds to have surgery); AR 64-66 (Plaintiff had lost only 20-22 pounds at the time of the hearing, despite his "good faith" efforts to lose enough weight to have the surgery).) While Plaintiff has not undergone further injections or had surgery since 2013, the record does not reflect that more aggressive treatment options were appropriate or available given Plaintiff's weight issues. *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010). "A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist." *Id.*; *see also Carmickle*, 533 F.3d at 1162 ("[C]onservative course of treatment . . . is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment").

While an unexplained or inadequately explained failure to seek or follow a prescribed course of treatment may be a proper basis on which to base an adverse credibility finding, *see Molina*, 674 F.3d at 1112, the ALJ's reliance on Plaintiff's failure to use his CPAP mask is insufficient without further explanation to demonstrate Plaintiff's subjective pain testimony is not credible. (*See* AR 16; *see also* 361; 371; 381.) The ALJ failed to clearly and convincingly articulate some link between Plaintiff's medically determinable sleep apnea impairment and the notes that he was non-complaint with his mask. (AR 16.) Though the Commissioner concludes that Plaintiff's refusal to follow prescribed treatment for his sleep apnea demonstrates he is not credible, the record reflects only that Plaintiff testified he was unable to sleep due to pain, *not* due to sleep apnea. The Court will not comb through the record to find evidence supporting this alternative explanation for finding Plaintiff's subjective symptom testimony not credible. *Brown-Hunter*, 806 F.3d at 494-95 (reviewing court may not draw inferences from the ALJ's summary of the medical evidence to infer a basis for the adverse credibility determination where none is stated).

The ALJ also rejected Plaintiff's subjective testimony as inconsistent with his admitted daily activities. (AR 16.) While the mere fact that a claimant engages in certain daily activities does not necessarily detract from his credibility as to overall disability, daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting. *Orn*, 495 F.3d at 639; *see also Thomas*, 278 F.3d at 959. A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient evidence to support an adverse credibility finding when performed for a substantial portion of the day. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Thomas*, 278 F.3d at 959.

The ALJ erred by finding Plaintiff's daily activities undercut his subjective testimony as to the limiting effects of his impairments. (AR 16 (finding Plaintiff's claim he is "drastical[ly] limit[ed]" in his ability to sit and stand or concentrate inconsistent with his admitted ability to

spend hours of his day watching television).)  Plaintiff reported he does not do "much of anything" (AR 250), has difficulty dressing, and "can't stand long" because of his back pain (AR 251-52). Though he sometimes cooks for himself, he spends 3 to 5 minutes preparing microwavable meals and cannot do any housework because he "can not (*sic*) stand very long."  (AR 252.)  Plaintiff is able to shop by himself for two hours once a month and is completely dependent on the use of a mobility scooter.  (AR 69.)  He spends most of his day watching television, from a large chair where he is able to lay supine somewhere between sitting and laying down.  (AR 66-67; 254.)

These types of activities *do not* tend to suggest that Plaintiff is still capable of performing the basic demands of unskilled work on a sustained basis.  *See, e.g., Stubbs-Danielson*, 539 F.3d at 1175 (the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband in managing finances – all of which "tend[ed] to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis").

The Commissioner finally contends that Plaintiff's testimony that he could only sit for 5-10 minutes at a time, could only sit in a car for 20 minutes as a time, and spent the majority of his day "flop[ped]" in a "big chair" "try[ing] to get comfortable" is internally inconsistent.  (Doc. 18, p. 11(citing AR 50-51; 53; 66 (testifying he "lie[s] across" the chair in a position "sitting up, lying down sort of"); 242.)  Contrary to the Commissioner's assertion, however, Plaintiff has consistently testified that he is unable to remain in a sitting position for long without needing to change positions.  (*See* AR 50-51 (testifying he can sit for 5-10 minutes before his legs and lower back go numb and he must change positions); 53 (testifying he can only sit in a car for 20 minutes before having to stop the car, get out of the car, and stretch due to his lower back problems); 242 (Ms. Forrister's testimony that the majority of Plaintiff's time is spent "sitting, laying, leaning for support to ease pain" and that he is "constantly trying to get comfortable & any sort of relief from pain").)

In sum, the ALJ's articulated reasons were not properly supported by the record and sufficiently specific to allow the Court to conclude that he rejected Plaintiff's testimony on

permissible grounds.

### B. The ALJ's Consideration of the Medical Evidence

Plaintiff contends the ALJ failed to articulate specific and legitimate reasons for rejecting Dr. Eckermann's medical opinion. (Docs. 11; 19.) The Commissioner responds that the ALJ properly evaluated the medical opinion evidence. (Doc. 18.)

#### 1. Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id*. Where a treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id*. at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Factors relevant to evaluating medical opinions include the amount of relevant evidence that supports the opinion and the quality of the explanation provided and the consistency of the medical opinion with the record as a whole. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(3)-(6)).

#### 2. The ALJ's Consideration of Dr. Eckermann's Medical Opinion

The ALJ gave "little weight" to consultative, examining neurosurgeon Dr. Eckermann's February 2012 opinion that Plaintiff could not do work that involved lifting or prolonged sitting (AR 314) because "there are no follow-up treatment notes in the record; his opinion concerning [Plaintiff]'s limitations was vague, conclusive, and inconsistent with clinical findings of 5/5 strength and toe/heel walk, [and] further, [Plaintiff]'s activities are inconsistent with his opinion." (AR 16.)

The fact that Dr. Eckermann only examined Plaintiff once, as an examining physician, and therefore had no "follow-up treatment notes" is not a sufficient reason to discredit his opinion. *See Lester*, 81 F.3d at 830; *Pasos v. Colvin*, No. EDCV-14-1334-RNB, 2015 WL 1097329, at *5 (C.D. Cal. Mar. 9, 2015) ("it is well-settled that the opinions of examining physicians (who normally see claimants only once) are entitled to deference and subject to the same legal standard that the Commissioner must apply to the opinions of treating physicians"). Dr. Eckermann is a board-certified neurosurgeon and entitled to great weight as a specialist in his field, even though he only saw Plaintiff once for a consultative examination. *Andrews v. Shalala*, 53 F.3d 1035, 1042 n.4 (9th Cir. 1995) ("We give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist") (quoting 42 U.S.C. § 416.927(d)(5)). That Dr. Eckermann was accorded only "little weight" for examining Plaintiff only once, whereas Dr. Van Kirk only saw Plaintiff once and was still assigned "great weight" and the testifying ME never examined Plaintiff[5] and was still assigned "significant weight," further underscores the insufficiency of the ALJ's reasoning. *Lester*, 81 F.3d at 830. The lack of "follow-up treatment notes in the record" is not a specific or legitimate reason sufficient to discredit Dr. Eckermann's opinion as to Plaintiff's RFC.

Dr. Eckermann opined Plaintiff had "severely disabling" severe leg and back pain secondary to grade II L5-S1 spondylolisthesis that would prevent Plaintiff "from doing any kind of work that is associated with lifting or prolonged sitting" based on his examination and review of imaging studies taken of Plaintiff's back. (AR 314.) The ALJ found Dr. Eckermann's opinion to be "vague, conclusive, and inconsistent with clinical findings of 5/5 strength and toe/heel walk." (AR 16.) Dr. Eckermann's opined limitations that Plaintiff would be precluded from any lifting or sitting for prolonged periods of time are not "vague." (Doc. 18, p. 8 ("Surely, Dr. Eckerman[n] did not mean to imply that Plaintiff could not lift *anything*, as he is able to lift food when he is grocery shopping or microwaving a meal, and at least his cane, by his own admission").) These are clear, explicit limitations eroding Plaintiff's ability to perform specific job requirements of possible occupations. *Compare* DOT 379.367-010 (job description for

---

[5] ME Arnold Ostrow never even saw Plaintiff in person, having testified by telephone. (AR 45.)

sedentary work as "surveillance system monitor" requires ability to lift or carry up to 10 pounds occasionally); DOT 211.462-010 (job description for "cashier II," noting that "[e]ven though the weight lifted may be only a negligible amount" the job has physical demands "in excess of those for [s]edentary work"); DOT 729.687-010 (job description for "electronics accessories assembler," noting that "[e]ven though the weight lifted may be only a negligible amount" the job has physical demands "in excess of those for [s]edentary work"), *with* AR 17-18 (finding Plaintiff retained the RFC to perform the requirements of representative occupations surveillance system monitor, cashier II, and electronics accessories assembler).

Dr. Eckermann's opined limitations on Plaintiff's ability to sit for prolonged periods and lift are also not "inconsistent with clinical findings of 5/5 strength and toe/heel walk." (AR 16.) Consistent with Dr. Eckermann's opinion, Dr. Van Kirk observed limited range of motion in Plaintiff's knee extension and lumbar spine, positive supine straight leg raise, no patellar reflexes, and a stripe of hypoesthesia in the right lower extremity. (AR 301-02.) The Commissioner directs the Court to treating notes from Kern County Medical Center to demonstrate Plaintiff was found to be in "no acute distress" and with "motor 5/5" and "heel/toe intact." (Doc. 18, p. 9.) A review of the record, however, reflects that Plaintiff's gait was also observed to be slow and antalgic. (*See* AR 368.) It is unclear how these clinical observations are actually "inconsistent" with Dr. Eckermann's opinion that Plaintiff is precluded from jobs requiring lifting or sitting for long periods of time, as a heel/toe walk and motor strength do not directly equate to the ability to lift objects or sit for long periods of time.

Finally, the ALJ discounted Dr. Eckermann's opinion as inconsistent with Plaintiff's admitted activities, but failed to identify *which* specific activities were inconsistent with Dr. Eckermann's opinion that Plaintiff is severely limited in his ability to lift or sit for long periods of time limitations. (*See* AR 16.) Plaintiff testified that he spends most of his day watching television on a large chair, can walk for about twenty feet before needing to rest, lift no more than 3 pounds, sit for no more than a couple of minutes at a time, and stand/walk no more than 15 minutes at a time. (AR 15-16.)

Though the Commissioner appears to consider Plaintiff's ability to "lift food when he is grocery shopping or microwaving a meal, and at least his cane, by his own admission" sufficient to invalidate Dr. Eckermann's opinion that Plaintiff would be unable to "do[ ] any kind of work that is associated with lifting" (Doc. 18, p. 8 (citing AR 69-72)), the ALJ provided no specific examples of any activity that contradicts these limitations (AR 16). *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001) (an agency decision cannot be affirmed based on a ground that the agency did not invoke in making its decision). It is unclear from a review of the record how any of Plaintiff's admitted activities, which include spending the vast majority of his day alternating between sitting and laying down while watching television, using a cane for balance and getting in and out of his chair as needed to alleviate pain, and lifting up to 3 pounds at a time (*see* AR 66-67; 255) actually contradict Dr. Eckermann's opinion. The Court is unpersuaded by the Commissioner's post-hoc explanation that Plaintiff's admitted daily activities contradict Dr. Eckermann's opinion that Plaintiff is precluded from work requiring lifting or sitting for long periods of time. (Doc. 18, p. 8.)

In sum, the ALJ erred in his consideration of Dr. Eckermann's opinion.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and that remand for reconsideration is warranted. Accordingly, the Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Carl Leroy Cagle, and against Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **July 19, 2016**                     /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE